UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEPHANIE MCCREA,

                Petitioner,

     v.

DEBORAH J. WOFFORD,

                Respondent.

CASE NO. 3:18-CV-05054-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: March 29, 2019

      The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner Stephanie McCrea filed the petition pursuant to 28 U.S.C. § 2254.

      Petitioner, a high school drama teacher, was convicted of having sex on multiple occasions with one of her students, who was just 15 years old. Petitioner argues that her 60 month sentence was imposed in violation of her Fourteenth Amendment equal protection guarantees because other teachers received lower sentences for similar crimes, and in violation of

1  her Eighth Amendment protection against cruel and unusual punishment because the sentence

2  was disproportionate to her crimes. Petitioner also argues that one of her community custody

3  requirements violates the First and Fourteenth Amendment, that a second community custody

4  requirement violates only the Fourteenth Amendment, and that the trial court improperly

5  weighed two pieces of evidence at her sentencing hearing. However, petitioner cannot show that

6  she is in a protected class nor that her sentence was imposed with discriminatory intent, and she

7  cannot show that her sentence is grossly disproportionate to her crimes. Further, petitioner's

8  challenge to her community custody conditions are procedurally defaulted and petitioner has not

9  shown cause or prejudice to justify the default, thereby barring review by the Court.

10      Therefore, after reviewing each of her numerous claims, she is not entitled to habeas

11  relief on any of them, and the Court recommends that her habeas petition be denied on all

12  grounds.

13                    **PETITIONER'S GROUNDS IN THIS HABEAS PETITION**

14  1.  Petitioner was denied a special sex offender sentencing alternative ("SSOSA") in
        violation of equal protection under the Fourteenth Amendment because she was a teacher
15      and all other teachers convicted of sex crimes against students have received SSOSA.

16  2.  Petitioner's denial of the SSOSA and subsequent sentence was grossly disproportionate
        in comparison to others sentenced for similar crimes in violation of the Eighth
17      Amendment.

18  3.  The trial court improperly provided too much weight to the opinion of the victim's
        mother, which contradicted the victim's own opinion.
19
20  4.  The trial court failed to give any meaningful consideration to petitioner's traumatic brain
        injury as a mitigating factor at sentencing.

21  5.  The community custody requirement barring the use of "electronic media" violates
        petitioner's First and Fourteenth Amendment rights.
22
23  6.  The community custody requirement barring petitioner from "frequenting areas where
        minors congregate" violates petitioner's Fourteenth Amendment rights.

24

REPORT AND RECOMMENDATION - 2

1    **BASIS FOR CUSTODY AND FACTS**

2        Petitioner pled guilty to four counts of child rape in the third degree and one count of

3    witness tampering. She was sentenced to 60 months imprisonment, rather than a lower term

4    under Washington's special sex offender sentencing alternative ("SSOSA"). She is currently

5    serving her community custody sentence. Though the Court described the underlying facts of

6    petitioner's habeas petition in its previous report and recommendation (Dkt. 11, pp. 3-4), for the

7    sake of clarity, the Court reiterates them here.

8        The state courts' opinions on appeal did not provide extensive background behind

9    petitioner's case. However, at sentencing, the trial court utilized a presentencing investigation

10   that describes petitioner's underlying crimes:

11   On [January 15, 2015], Evergreen High School Resource Officer Landas received
     information from Principal Lisa Emmerich that a teacher employed with the school
12   district and working at Evergreen may be having a romantic relationship with a
     student. The information came to light when the student's mother, Amy, contacted
13   the school and alerted officials that her 15 year-old son, D.W.F., had sent over
     11,000 text messages on one phone bill cycle and more than 7,000 were to his
14   drama teacher, Stephanie McCrea, at all hours of the day.

15   Officer Landas obtained permission from Amy to take the cell phone into evidence
     and have it analyzed by investigators with their department's Digital Evidence
16   Cybercrime Unit ["DECU"]. After a forensic analysis of the phone, there was
     reason to believe McCrea was involved in a sexual relationship with D.W.F. Amy
17   was subsequently advised that it was deemed necessary for detectives to interview
     D.W.F. Amy agreed and stated that she had confiscated her son's Kindle. She had
18   reviewed the contents of the Kindle and was able to see what she believed to be
     fake Facebook accounts and names used for continuing communication between
19   her son and McCrea. Amy said she tried to look through the messages but it
     appeared the accounts had been deactivated so she could only see the most recent
20   messages from her son. Amy agreed to bring the Kindle to police for DECU
     analysis.

21
     On [January 21, 2015], D.W.F. was interviewed by Detectives Watkins and Hafer.
22   D.W.F. disclosed he had been in a sexual relationship with McCrea since the
     beginning of December 2014. D.W.F. stated he and McCrea had sexual contact on
23   multiple occasions that included kissing, oral sex, and sexual intercourse. The

24

REPORT AND RECOMMENDATION - 3

sexual contacts were reported to have occurred at two locations to include McCrea's residence and Evergreen High School.

D.W.F. reported meeting McCrea in her office four to five times a week where they would kiss before school or after drama practice. D.W.F. described two events that occurred in McCrea's office after school where she performed oral sex on him. Both of these events occurred prior to the Christmas/Winter break.

D.W.F. also described two times when he and McCrea had sexual intercourse. The first was over Christmas break when McCrea picked up D.W.F. from his home and took him back to her residence to exchange Christmas gifts. D.W.F. said he and McCrea had sexual intercourse on her couch prior to meeting up with other drama students to watch a movie at a local theater.

D.W.F. stated the second and last time he and McCrea had sexual intercourse was the first day back to school after the Christmas/Winter break. D.W.F. said he and McCrea had sexual intercourse in McCrea's office after school. When asked what happened after, D.W.F. said McCrea checked her phone and commented she did not want to be late picking up her child from soccer.

D.W.F. disclosed that he and McCrea had discussions about keeping their relationship quiet and rehearsed what to say if interviewed by law enforcement. McCrea would have D.W.F. practice answers to questions he potentially could be asked and she would correct and critique his responses. D.W.F. also mentioned he and McCrea had planned to continue their relationship and not make it public until he was 18 years old.

D.W.F. acknowledged he and McCrea had Facebook accounts in the user names 'Phoenix Traveler' and 'Corey Taylor'. They used these accounts to communicate after they knew about the investigation.

Dkt. 8, Ex. 2, pp. 3-4.

The Washington Supreme Court briefly summarized the status of petitioner's case when it denied discretionary review of petitioner's first personal restraint petitioner ("PRP"):

. . . [Petitioner] pleaded guilty in Clark County Superior Court to four counts of third degree child rape and one count of witness tampering. Ms. McCrea had no criminal history, but her multiple current offenses resulted in an offender score of 10 on each child rape count. Based on those scores, the standard range for each child rape conviction was the 60-month statutory maximum. The State asked the superior court to impose concurrent sentences on the child rape convictions and run a standard-range sentence on the tampering conviction consecutively to the other sentences as a form of exceptional sentence, urging that Ms. McCrea had abused a position of trust and that running the tampering sentence concurrently would result

1

2

in that crime going unpunished. Ms. McCrea requested [SSOSA]. The trial court rejected the sentencing alternative and declined to impose an exceptional sentence, and thus imposed a total sentence of 60 months.

3    Dkt. 8, Ex. 17, p. 1.

4    The Washington Supreme Court also briefly addressed her challenges to her community

5    custody conditions when it denied her second PRP: ". . . [Petitioner] challenges the trial court's

6    imposition of community custody conditions restricting her contact with minors without

7    approval by the Department of Corrections and prohibiting unauthorized use of electronic

8    media." Dkt. 21-1, Ex. 26 at p. 1.

9    **PROCEDURAL HISTORY**

10    **I.    Direct Appeal and First Personal Restraint Petition**

11    Petitioner, acting pro se, appealed the trial court's sentencing decision. *Id.*, Ex. 4. The

12    Court of Appeals found that petitioner had filed her appeal outside the thirty-day window

13    available under Washington law, and so issued a ruling dismissing the appeal. *Id.*, Exs. 5, 6.

14    Petitioner then filed a timely personal restraint petition ("PRP"). *Id.*, Ex. 8. The Court of

15    Appeals dismissed her PRP (*Id.*, Ex. 11), and petitioner filed a motion for discretionary review

16    with the Washington Supreme Court (*Id.*, Ex. 12). In her motion, petitioner argued: 1) denial of

17    the SSOSA based on petitioner's status as a teacher violated equal protection under the

18    Fourteenth Amendment; 2) denial of SSOSA was a violation of her Eighth and Fourteenth

19    Amendment rights because other courts had granted SSOSA to individuals in her position; 3) the

20    sentence was disproportionate to the crime in violation of the Eighth Amendment; 4) the trial

21    court improperly failed to consider her traumatic brain injury when it made its sentencing

22    determination; 5) the trial court erred in evaluating two opinions, one from the victim and one

23    from the victim's mother, by giving greater weight to the opinion disfavorable to petitioner in

24

violation of the Rule of Lenity; and 6) her community custody requirements to avoid areas where minors are known to congregate and banning "electronic media" were unconstitutionally vague. *Id*.

The Washington Supreme Court denied petitioner's PRP as to the first five grounds, finding they lacked merit. *Id*., Ex. 17. However, it denied her sixth ground because it found she had not properly raised the challenges to her community custody with the Court of Appeals. *Id*. Petitioner filed a motion to modify the ruling (*Id*., Ex. 18), which was denied (*Id*., Ex. 19).

## II.    Federal Habeas Petition

Petitioner filed a federal petition for a writ of habeas corpus in January of 2018. Dkt. 1. The Court initially recommended petitioner's habeas petition be dismissed, finding four grounds lacked merit and finding petitioner had failed to exhaust two grounds. Dkt. 11. The Honorable Robert Bryan declined to adopt the report and recommendation, instead re-referring the case for further consideration in light of the two unexhausted grounds. Dkt. 12. The Court then ordered petitioner to advise the Court whether she would prefer: (1) to dismiss the habeas petition without prejudice, to be refiled once she had exhausted his final two grounds; (2) to stay the habeas petition while she exhausted her state court remedies as to her final two grounds; or (3) to withdraw the unexhausted grounds so that the Court could consider only the exhausted grounds. Dkt. 13. Petitioner stated she would prefer to stay the case, and so the Court entered an order staying the case until petitioner was able to exhaust her state court remedies. Dkt. 15.

## III.    Second Personal Restraint Petition

In November of 2017, petitioner had filed a second PRP, challenging the community custody conditions contained in grounds 5 and 6 of her habeas petition. Dkt. 21-1, Ex. 22. In May of 2018, the Washington Court of Appeals transferred the PRP to the Washington Supreme

1    Court because it was successive, pursuant to Washington statute. *Id*. at Ex. 25. In November of

2    2018, the Washington Supreme Court denied petitioner's PRP as untimely. *Id*. at Ex. 26.

3    **IV.    Continued Action in Federal Court**

4        In November of 2018, petitioner informed the Court that the Washington Supreme Court

5    had denied review of her PRP, so that her final two habeas grounds were fully exhausted, and

6    requested that the Court lift the stay on her habeas action. Dkt. 16. She also requested leave to

7    file an amended habeas petition. Dkt. 17. The Court denied petitioner's motion to amend without

8    prejudice because she had not followed local rules and provided the Court with a copy of her

9    proposed amended petition, but lifted the stay on the case and ordered the parties to file

10   supplemental briefing as to grounds 5 and 6 of petitioner's habeas petition. Dkt. 19. Respondent

11   filed supplemental briefing and additional state court records, Dkts. 20, 21, but petitioner did not

12   file any supplemental briefing or another motion to amend, *see* Dkt.

13                        **STANDARD OF REVIEW**

14       Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

15   petition may be granted with respect to any claim adjudicated on the merits in state court only if

16   the state court's decision was contrary to, or involved an unreasonable application of, clearly

17   established federal law, as determined by the Supreme Court, or if the decision was based on an

18   unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

19       A federal court may grant a habeas petition under two circumstances. Under the "contrary

20   to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion

21   contrary to that reached by the Supreme Court on a question of law, or if the state court decides a

22   case differently than the Supreme Court has on a set of materially indistinguishable facts. *See*

23   *Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable application" clause, a federal

24

1  habeas court may grant the writ only if the state court identifies the correct governing legal

2  principle from the Supreme Court's decisions but unreasonably applies that principle to the facts

3  of the prisoner's case. *Id.* The Supreme Court has made clear that a state court's decision may

4  be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538

5  U.S. 63, 69 (2003). AEDPA requires federal habeas courts to presume the correctness of state

6  courts' factual findings unless applicants rebut this presumption with "clear and convincing

7  evidence." 28 U.S.C. § 2254(e)(1). In addition, review of state court decisions under 28 U.S.C. §

8  2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on

9  the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

10                                    **EVIDENTIARY HEARING**

11          The decision to hold a hearing is committed to the Court's discretion. *Schriro v.*

12  *Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

13  could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

14  the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether

15  relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

16  the state court. *Cullen*, 131 S.Ct. at 1388. A hearing is not required if the allegations would not

17  entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows

18  that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a

19  district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct.

20  1388 (2011).

21          Here, petitioner's claims rely on established rules of constitutional law. There are no

22  factual issues that could not have been previously discovered by due diligence. Finally, the facts

23  underlying petitioner's claims are sufficient to establish that a rational fact finder would have

24

1    found her guilty of the crime. Therefore, the Court concludes that an evidentiary hearing is not

2    necessary to decide this case and petitioner's claims may be resolved on the existing state record.

3                                            **DISCUSSION**

4    **I.       Fourteenth Amendment Equal Protection (Ground 1)**

5            Petitioner alleges that her Fourteenth Amendment right to equal protection has been

6    violated because she was sentenced to prison time, rather than SSOSA, despite the fact that all

7    other teachers convicted of sex crimes with students have been provided SSOSA instead of

8    prison time. The Fourteenth Amendment's equal protection clause "is essentially a direction that

9    all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living*

10   *Center*, 473 U.S. 432, 439 (1985). To assert a claim under equal protection, petitioner must show

11   that she was similarly situated to other defendants who received preferential treatment. *See*

12   *Fraley v. Bureau of Prison*, 1 F.3d 924, 926 (9th Cir. 1993). Thus, petitioner must show: 1) she

13   is a member of a protected class; and 2) she was being intentionally treated differently from a

14   similarly situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976); *Draper v. Rhay*, 315

15   F.2d 193, 198 (9th Cir. 1963). For equal protection purposes, a "protected class" is a group

16   "comprised of similarly situated persons so that the factor motivating the alleged discrimination

17   can be identified." *Thornton*, 425 F.3d at 1167 (citing *Freeman v. City of Santa Ana*, 68 F.3d

18   1180, 1187 (9th Cir. 1995). Further, though a petitioner may plead that she is a "class of one,"

19   she "still bears the burden of proving that [she] 'has been intentionally treated differently from

20   others similarly situated and that there is no rational basis for the difference in treatment.'"

21   *Thornton*, 425 F.3d at 1167 (citing *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 661,

22   679 (9th Cir. 2002)).  Hence, for petitioner to prevail on an Equal Protection Clause claim,

23

24

1    petitioner must not only show differential treatment by the trial court, but also that the trial court

2    intentionally or purposefully discriminated against her.

3          The Court of Appeals analyzed this issue when it denied petitioner's first PRP:

4          [Petitioner] cites to a number of instances in which teachers, who were found guilty
          of sex crimes involving students, received SSOSA sentences, and contends that she
5          is similarly situated to those teachers. But for equal protections purposes, 'similarly
          situated' means 'near identical participation in the same set of criminal
6          circumstances.' *State v. Hundley*, 115 Wn.2d 275, 290 (1990). McCrea does not
          show such identity of circumstances. And for more than rational basis scrutiny to
7          be applied, McCrea must show that she was part of a protected class. 11 Wn.2d at
          290-91. She fails to make such a showing. The trial court's finding of an abuse of
8          a position of trust is rational basis for not imposing a SSOSA sentence. McCrea
          does not show an equal protection violation.

9
10   Dkt. 8, Ex. 11, p. 2.

11          The Washington Supreme Court Commissioner similarly analyzed this issue when it

12   denied review of petitioner's first PRP:

13          Ms. Crea argues that the superior court violated her constitutional equal protection
          rights by denying her the sentencing alternative on the basis of her status as a
14          teacher. But Ms. McCrea's status as a teacher played a role in the court's decision
          only to the extent that Ms. McCrea's sexual relationship with a student constituted
15          an obvious abuse of a position of trust. The court did not suggest that the status of
          teacher per se precludes the imposition of a SSOSA sentence. It considered all
          factors, including, as indicated, the wishes of the victim's mother.
16
17          Ms. McCrea also finds an equal protection violation in the fact that other teachers
          convicted of sexual relations with students have been given SSOSA sentences. But
18          in this context she must show that she is similarly situated with others by virtue of
          near identical participation in the same set of criminal circumstances. *State v.*
19          *Handley*, 115 Wn.2d 275, 290 (1990). While showing surface similarities with
          other sexual abuse prosecutions involving teachers, Ms. McCrea does not show that
20          her circumstances are so identical with those of others as to establish an equal
          protection violations. Nor does she show that others in circumstances nearly
21          identical to hers have uniformly received SSOSA sentences, such that it be said she
          is being singled out for unequal treatment. . . .

22   Dkt. 8, Ex. 17, p. 3.

23

24

REPORT AND RECOMMENDATION - 10

1    Petitioner argues that she is being treated differently than others similarly situated,

2  namely other teachers who have been convicted of sex crimes with students. The Court

3  disagrees.

4    First, the Court does not find that petitioner is in a class of "similarly situated"

5  individuals. She notes that several other teacher who have been convicted of sex crimes with

6  students have been provided SSOSA rather than prison time. *See* Dkt. 3, pp. 13-14. However,

7  these teachers are not similarly situated to petitioner. It is true that each of the identified

8  individuals are teachers and each of them have been convicted of some form of sexual

9  misconduct with a student. However, all but one of the individuals were convicted of crimes

10  different than petitioner's. Dkt. 3, pp. 13-14 (naming individuals convicted of second degree rape

11  of a child, first degree sexual misconduct, and third degree molestation, but only including one

12  other conviction for third degree rape of a child). Further, each individual has a different fact

13  pattern. The victims vary in age from twelve to seventeen, the perpetrators had different numbers

14  of victims, some allegations continued for years whereas others appear to be single incidents, and

15  only one perpetrator had a mitigating circumstance. *Id*. The only similarity between petitioner

16  and those individuals is that they are all teachers who pled guilty to having sexual relations with

17  a student or students. Petitioner has not demonstrated that the teachers she identified constitute a

18  similarly situated class against which to compare petitioner's treatment. Thus, she has not shown

19  her equal protection rights have been violated.

20    Second, even if petitioner showed that she was part of a protected class, the fact that the

21  trial court found that petitioner's actions warranted prison time rather than SSOSA based on her

22  abuse of trust does not of itself demonstrate discriminatory intent. Because petitioner's alleged

23  class is neither based on race nor gender, the Court determines whether the trial court's action

24

1  was patently arbitrary and bore no relationship to a legitimate government interest. *See Vermouth*

2  *v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987). The trial court heard testimony from the

3  victim's mother and petitioner at the sentencing hearing, and utilized both parties' trial

4  memoranda as well as a pretrial investigation, which recommended denying SSOSA, when

5  making its determination. Dkt. 8, Ex. 21, p. 4. Based on this evidence, the Court concluded that,

6  because of the damage to the community and the breach of trust petitioner committed, SSOSA

7  was not appropriate and the standard 60 month sentence was proper. Dkt. 8, Ex. 21, pp. 24-28.

8       There is nothing on the record to indicate that the reason she is serving time is because

9  the state court discriminated against her, rather than because the state court made a rational

10  finding of fact. Based on the evidence presented at sentencing, the trial court reasonably came to

11  the conclusion that petitioner should be incarcerated and furthered a legitimate government

12  interest in finding that the community would not benefit from petitioner's early release under

13  SSOSA.

14       The Court finds that petitioner has not shown that she is in a protected class or that the

15  trial court exercised anything other than rational decision making when it declined to provide her

16  with SSOSA. Thus, when the state court made the same determination, it did not come to a

17  conclusion contrary to, or an unreasonable application of, clearly established federal law.

18  Therefore, the Court recommends petitioner's habeas petition be denied as to ground 1.

19  **II.    Eighth Amendment Proportionate Sentencing (Ground 2)**

20       Petitioner also alleges that, compared with the other convicted teachers, her sentence is

21  grossly disproportionate so as to constitute a violation of her Eighth Amendment protections.

22  "The Eighth Amendment does not require strict proportionality between crime and sentence.

23  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing*

24

REPORT AND RECOMMENDATION - 12

*v. California*, 538 U.S. 11, 24-25 (2003). There is no bright-line rule determining when a

sentence is disproportionate. *Graham v. Florida*, 560 U.S. 48, 59-60 (noting that, in one case,

life without parole was disproportionate to a seventh felony of passing a worthless check, but, in

another case, life with the possibility of parole was not disproportionate to a third felony of

obtaining money by false pretenses). "[I]n applying gross disproportionality principle courts

must objectively measure the severity of a defendant's sentence in light of the crimes [s]he

committed." *Norris v. Morgan*, 622 F.3d 1276, 1287 (9th Cir. 2010). The Court "considers all

the circumstances of the case to determine whether the sentence is unconstitutionally excessive."

*Graham*, 560 U.S. at 59. Further, in determining whether a sentence violates the Eighth

Amendment, the court grants "substantial deference" to legislative determinations of appropriate

punishments. *See Harmelin v. Michigan*, 501 U.S. 957, 998-99 (1991).

　　　　The Washington Supreme Court Commissioner analyzed this challenge when it denied

review of petitioner's first PRP:

> . . . [T]here is no merit to Ms. McCrea's argument under the Eighth Amendment to
> the United States Constitution: the superior court did not deny SSOSA sentence for
> an impermissible reason, and Ms. McCrea demonstrates no gross disproportionality
> of her sentence in relation to others similarly situated. Ms. McCrea received a
> standard range sentence. She does not show this sentence is constitutionally cruel
> and unusual.[1]

Dkt. 8, Ex. 17, p. 3 (parallel citations omitted).

　　　　Here, petitioner claims that her sentence is disproportionate because it is significantly

longer than other teachers who have also been convicted of sexual misconduct with students.

However, she has provided no evidence that the sentence is anything more than a standard,

---

[1] Ms. McCrea also suggests that, because her sentence is purportedly harsher than those of other educators convicted of child sex offenses, it is an exceptional sentence, the factual support for which must be found by a jury pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004). But *Blakely* plainly does not apply to standard range sentences, regardless of the comparative sentences imposed on others. [footnote by Washington Supreme Court]

1    statutory sentence. Based on petitioner's four counts of child rape, the statutory range was 60

2    months. *See* Dkt. 8, Ex. 21. The trial court did not impose an exceptional sentence, but instead

3    imposed the standard range sentence. *Id*. at pp. 27-28. Because the Court defers to the legislature

4    on matters of appropriate punishment and petitioner has not provided anything to the contrary,

5    the Court finds that 60 months imprisonment is not disproportionate to petitioner's four counts of

6    third degree rape of a child and one count of witness tampering. Thus, the trial court did not

7    make a decision contrary to, or an unreasonable application of, clearly established federal law

8    when it came to the same conclusion. Therefore, the Court recommends petitioner's habeas

9    petition be denied as to ground 2.

10    **III.    State Law Claims (Grounds 3 and 4)**

11        Petitioner also alleges that the trial court improperly weighed the opinions of the victim

12    and the victim's mother at sentencing, and improperly failed to take her traumatic brain injury

13    into account as a mitigating factor. Federal habeas relief does not lie for mere errors of state law.

14    *Estelle v. McGuire,* 502 U.S. 62, 67 (1991).  A state court has the last word on the interpretation

15    of state law. *McSherry v. Block,* 880 F.2d 1049, 1052 (9th Cir. 1989).

16        A petitioner "may not transform a state-law issue into a federal one merely by asserting a

17    violation of [a constitutional right]." *Langford v. Day,* 110 F.3d 1380, 1389 (9th Cir. 1997), *cert.*

18    *denied,* 522 U.S. 881 (1997); *Swarthout v. Cooke,* 131 S.Ct. at 862–63 (the Supreme Court has

19    "long recognized that a mere error of state law is not a denial of due process" and the same rule

20    applies to the deprivation of a state-created liberty interest); *Little v. Crawford,* 449 F.3d 1075,

21    1083 n. 6 (9th Cir. 2006) ("We cannot treat a mere error of state law, if one occurred, as a denial

22    of due process; otherwise, every erroneous decision by a state court on state law would come

23    here as a federal constitutional question."). Further, unless it violates the Constitution, a state

24

1    court's sentencing decision is generally a decision based on state law and thus insulated from

2    habeas review. *Miller v. Vasquez*, 868 F.2d 1116, 1119 (9th Cir. 1989).

3        Here, petitioner argues that the trial court committed error when it gave great weight to

4    the victim's mother's statement and when it failed to take petitioner's traumatic brain injury into

5    account. However, though she couches both of these arguments in terms of federal constitutional

6    violations, petitioner has only alleged state law violations. Washington statute, RCW

7    9.94A.670(4) requires the trial court to grant great weight to the victim's opinion about whether

8    a defendant should receive SSOSA. Dkt. 8, Ex. 21, p. 26. Here, the trial court determined that,

9    because the victim was a minor, his mother's opinion, as the victim's guardian, should also be

10   attributed great weight. *Id.* at p. 27. Though petitioner's counsel at sentencing raised the fact that

11   petitioner had experienced head trauma, which may have affected her judgment (*Id*. at p. 17), the

12   trial court declined to address that argument and instead relied largely on petitioner's breach of

13   trust, the damage her crime had caused the community, and the fact that the victim's family was

14   vehement that SSOSA be denied (*Id*. at pp. 24-28). The trial court made its sentencing decision

15   based on the criteria laid out in Washington statute, RCW 9.94A.670. Though the trial court gave

16   greater weight to some evidence, its decision to do so was based on state law and petitioner has

17   not demonstrated that it violated federal due process. Because the trial court's decision was

18   based purely on state law and because the Court will not review alleged errors in state law, the

19   state trial court's methodology with regard to the victim's testimony and petitioner's mitigating

20   circumstances is beyond the scope of habeas review. Therefore, the Court recommends that

21   petitioner's habeas petition be denied as to grounds 3 and 4.

22

23

24

1    **IV.     Conditions of Community Custody (Grounds 5 and 6)**

2        Petitioner's grounds 5 and 6 challenge the conditions imposed on her during her

3    community custody sentence. Specifically, petitioner challenges the custody requirement barring

4    the use of "electronic media," and barring petitioner from "frequenting areas where minors

5    congregate," arguing that they violate her First and Fourteenth Amendment rights. Dkt. 3, p. 16.

6    Respondent has now filed supplemental briefing and additional state court records addressing

7    these two grounds. Dkts. 20, 21. Initially, respondent argues that petitioner's grounds 5 and 6

8    should be dismissed because petitioner's grounds challenge conditions of her confinement, rather

9    than her judgment or sentence, and so should be raised in a 42 U.S.C. § 1983 action, rather than a

10   habeas petition. Dkt. 20; *see Thornton v. Brown*, 757 F.3d 834, 841 (9th Cir. 2013) (noting some

11   claims may be raised in either 28 U.S.C. § 2254 actions or 42 U.S.C. § 1983 actions); *see also*

12   *Alcala v. Rios*, 434 Fed. App'x 668, 669 (9th Cir. 2011) (petitions challenging the conditions of a

13   prisoner's confinement are not properly raised in a habeas petition); *Moore v. Schwarzenegger*,

14   2010 WL 2740323, at *2-*3 (C.D. Cal. May 28, 2010) (finding that a civil rights action

15   challenging a prisoner's conditions of parole challenged the fact of confinement, and therefore

16   were more properly raised in a habeas petition); *Crane v. Beard*, 2017 WL 1234096, at *4 (C.D.

17   Cal. April 3, 2017) (finding that a challenge to a prisoner's condition of confinement did not

18   challenge his fact or duration of confinement, and so was not cognizable in habeas). However,

19   the Court need not determine whether petitioner's grounds 5 and 6 are properly raised in this

20   habeas petition because they are procedurally defaulted.

21       Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*,

22   290 F.3d 1223, 1230 (9th Cir. 2002). The exhaustion doctrine applies when the state court has

23   not been presented with an opportunity to consider a petitioner's claims and the opportunity may

24   still be available to the petitioner under state law. 28 U.S.C. § 2254(c). In contrast, the procedural

1    default rule bars consideration of a federal claim when it is clear that the state court has been

2    presented with the federal claim but declined to reach the issue for procedural reasons or it is

3    clear the state court would hold the claim procedurally barred. *Franklin*, 290 F.3d at 1230-31

4    (citations omitted). If a state procedural rule precludes the petitioner from raising her claims at

5    the state level, the claim is considered "procedurally defaulted" and the federal courts are barred

6    from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991);

7    *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

8         Petitioner first raised challenges to her community custody conditions in her first

9    personal restraint petition. However, the Washington Supreme Court found that she had not

10   raised those challenges properly because she raised them for the first time with the Washington

11   Supreme Court:

12        Ms. McCrea . . . challenges a community custody condition prohibiting her from
          "enter[ing] into or frequent[ing] establishments or areas where minors congregate
13        without being accompanied by a responsible adult approved by [the Department of
          Corrections] and sex offender treatment provider to include, but not limited to:
14        school grounds, malls, parks, or any other are designated by [the department]." She
          also disputes a condition prohibiting "unauthorized use of electronic media." She
15        urges specifically that these conditions are unconstitutionally vague. But she
          asserted no vagueness claim in her personal restraint petition; she may not do so for
16        the first time in this court. *In re Pers. Restraint of Tobin*, 165 Wn.2d 172, 175 n.1
          (2008).[2]

17   Dkt. 9, Ex. 17 at pp. 4-5 (parallel citations and citations to the record omitted).

18        When petitioner again raised her community custody grounds in a second PRP, the

19   Washington Court of Appeals transferred the PRP to the Washington Supreme Court as a

20   successive petition. Dkt. 21-1, pp. 92-93. The Washington Supreme Court, after reviewing the

21   second PRP, stated:

22

23        [2] Ms. McCrae did assert in reply to the State's response to her petition that the electronic media prohibition
     was unconstitutionally vague. But issues may not be first raised in reply briefs. *In re Marriage of Bernard*, 165
24   Wn.2d 895, 908 (2009). [footnote by Court of Appeals]

1

2

3

4

McCrea filed her petition more than one year after the judgment and sentence was final. The petition challenged the imposition of certain community custody conditions. Courts will not consider untimely petitions unless they fall within a specific exemption from the time bar, RCW 10.73.100, or unless the judgment and sentence is facially invalid or the original trial court lacked jurisdiction, RCW 10.73.090. McCrea has the burden of showing that one of these exemptions applies. *See In re Pers. Restraint of Carter*, 172 Wn.2d 917,933-34 (2011).

5

6

7

8

9

10

11

12

13

Specifically, McCrea challenges the trial court's imposition of community custody conditions restriction her contact with minors without approval by the Department of Corrections and prohibiting unauthorized use of electronic media. She argue that both conditions fall within the exemption for a significant, material, retroactive change in the law, RCW 10.73.100(6). As to the contact with minor condition, she asserts a change in the law based on *State v. Magana*, 197 Wn. App 189 (2016), *abrogated on other grounds by State v. Johnson*, 421 P.3d 969 (2018), and *State v. Irwin*, 191 Wn. App. 644 (2015). As to the electronic media conditions, she relies on *Packingham v. North Caroline*, 137 S. Ct. 1730 (2017). But *Packingham* involved a statute that criminalized access to social media networking sites by registered sex offenders; it did not concern community custody conditions that may be placed on sex offenders. And as to *Magan* and *Irwin*, McCrea failed to meet her burden of demonstrating that these cases represent a significant change in the law, are material, *and* are retroactively application. Therefore, a majority of the Court determined the petition was untimely and voted in favor of the following result: . . . That the personal restraint petition is dismissed as untimely.

14

Dkt. 21-1, pp. 95-96 (emphasis in original) (parallel citations omitted).

15

16

17

18

19

20

Here, because petitioner has raised grounds 5 and 6 at all levels of the Washington courts, her grounds are technically exhausted. However, the Washington Supreme Court declined to review petitioner's community custody grounds raised in her second PRP because they were procedurally defaulted. Thus, this Court is also barred from reviewing petitioner's grounds on their merits. *See Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court – that is, claims that the state court denied based on an adequate and independent state procedural rule").

21

22

23

24

The default will be excused and a petitioner will be entitled to federal habeas corpus review if she "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

1    fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir.

2    1998) (citing *Coleman*, 501 U.S. at 750). To show "cause," the petitioner must show "some

3    objective factor external to the defense" prevented her from complying with the state's

4    procedural rule. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477

5    U.S. 478, 488 (1986)). Once the petitioner establishes cause, she must show "'actual prejudice'

6    resulting from the errors of which [she] complains." *Allen v. Ornoski*, 435 F.3d 946, 956 (9th

7    Cir. 2006) (quoting *McCleskey*, 499 U.S. at 494 (*quoting United States v. Frady*, 456 U.S. 152,

8    168 (1982)).

9          Here, petitioner has not shown cause and prejudice to excuse her default. As noted above,

10   petitioner's case was stayed while she pursued her state court remedies. Upon lifting the stay, the

11   Court provided both parties with leave to file supplemental briefing addressing the now

12   exhausted habeas grounds. Dkt. 19. Respondent provided supplemental briefing and additional

13   state court records, showing petitioner's grounds had been dismissed by the state courts as

14   untimely. Dkts. 20, 21. Petitioner, however, did not provide the Court with any additional

15   briefing explaining why she had failed to properly raise her grounds in her first PRP. She has not

16   provided new evidence indicating she has suffered a miscarriage of justice or otherwise shown

17   her that default was justified.

18         Therefore, the Court recommends petitioner's grounds 5 and 6 be dismissed as

19   procedurally defaulted.

20                            **CERTIFICATE OF APPEALABILITY**

21         Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

22   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

23   (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

24   has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

(2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

certificate of appealability with respect to this petition.

## CONCLUSION

For the reasons stated above, the Court recommends that petitioner's habeas petition be

denied as to all grounds.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

*Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

March 29, 2019, as noted in the caption.

Dated this 12th day of March, 2019.

J. Richard Creatura
United States Magistrate Judge